UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS on behalf of the estates of PERSONAL COMMUNICATIONS DEVICES, LLC, and PERSONAL COMMUNICATIONS DEVICES HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>PINEBRIDGE VANTAGE PARTNERS, L.P., (f/k/a PINEBRIDGE VANTAGE CAPITAL, L.P.), et als.,<br><br>    Defendants. | 2:13-mc-01096 (SJF)<br><br><br><br>**Oral Argument Requested** |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO WITHDRAW THE REFERENCE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

LEGAL STANDARD ........................................................................................... 5

LEGAL ARGUMENT .......................................................................................... 6

    A.     Withdrawal of the Reference Is Inappropriate ........................................ 6

          1.     The Committee's Claims Are All Statutorily Core ................................ 8

               a.     Recharacterization.......................................................... 9

               b.     Equitable Subordination.................................................. 11

               c.     Setoff.......................................................................... 11

               d.     Unjust Enrichment and Breach of Contract ................................ 12

               e.     Declaratory Judgment and Claims Objections............................ 13

          2.     Other Considerations Dictated by Orion Militate Against
               Withdrawal of the Reference .......................................................... 13

    B.     The Bankruptcy Court is the Proper Current Forum Regardless of Whether
        the Reference May Be Withdrawn at a Later Date ............................................. 14

    C.     Bankruptcy Court Jurisdiction Is Constitutional.................................................. 16

CONCLUSION.................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelphia Recovery Trust v. DLP Group*,
    2012 WL 264180 (S.D.N.Y. 2012)......................................................................8

*Aetna Life Ins. Co. v. Danbury Square Assocs L.P. (In re Danbury Square Assocs,
L.P.)*,
    150 B.R. 544 (Bankr. S.D.N.Y. 1993) .............................................................11

*Baker v. Simpson*,
    613 F.3d 346 (2d Cir. 2010)...............................................................................7

*Bankruptcy Servs. Inc. v. Ernst & Young (In re CBI Holding Co.)*,
    529 F.3d 432 (2d Cir. 2008)..............................................................................12

*Ben Cooper, Inc. v. Ins. Co. of Penn. (In re Ben Cooper, Inc.)*,
    896 F.2d 1394 (2d Cir. 1990)..........................................................................7, 9

*In re Bernard L. Madoff Investment Securities LLC*,
    --- F.3d ---, 2014 WL 103988 (2d Cir. 2014) .................................................18

*Caldor Corp. v. S Plaza Assocs, L.P. (In re Caldor, Inc.-NY)*,
    217 B.R. 121 (Bankr. S.D.N.Y. 1998)............................................................13

*Dev. Specialists v. Peabody Energy (In re Coudert Bros.)*,
    2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011)..................................................8

*Dynegy Danskammer v. Peabody Coaltrade Int'l*,
    905 F. Supp. 2d 526 (S.D.N.Y. 2012)..............................................................8

*Futter v. Duffy (In re Futter Lumber Corp.)*,
    473 B.R. 20 (E.D.N.Y. 2012) .........................................................................10

*Gecker v. Flynn (In re Emerald Casino, Inc.)*,
    467 B.R. 128 (N.D. Ill. 2012) .........................................................................19

*Joseph Delgreco v. DLA Piper (In re Joseph Delgreco & Co.)*,
    2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) ....................................................8

*Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs.)*,
    491 BR 196 (E.D.N.Y. 2013)...........................................................................8

*Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
Holdings)*,
    480 B.R. 179 (S.D.N.Y. 2012)..........................................................................8

*LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*,
    53 F.3d 478 (2d Cir. 2995)..................................................................7

*In re Nat'l Gypsum Co.*,
    139 B.R. 397 (N.D. Tex. 1992)..........................................................7

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993)......................................................2, 5, 6, 13

*PSINet v. Cisco Sys. Capital Corp. (In re PSINet)*,
    271 B.R. 1 (Bankr. S.D.N.Y. 2001)..................................................10

*In re R. Bastyr & Assocs.*,
    81 B.R. 978 (Bankr. D. Minn. 1988) ...............................................11

*Resolution Tr. Corp. v. Best Prods. Co. (In re Best Prods. Co.)*,
    68 B.R. 26 (2d Cir. 1995)...................................................................9

*In re Salander O'Reilly Galleries*,
    453 B.R. 106 (Bankr. S.D.N.Y. 2011) ..............................................7

*Shugrue v. Air Line Pilots Ass'n*,
    922 F.2d 984 (2d Cir. 1990)...............................................................5

*SIPC v. Bernard L. Madoff Investment Securities*,
    LLC, 490 B.R. 46 (S.D.N.Y. 2013) ..........................................15, 16

*In re Southmark Corp.*,
    163 F.3d 925 (5th Cir. 1999) .............................................................7

*Statutory Comm. of Unsecured Creditors v. Motorola (In re Iridium Operating LLC)*,
    285 B.R. 822 (S.D.N.Y. 2002)..........................................................13

*Stern v. Marshall*,
    ___U.S. ___, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) .............. *passim*

*U.S. Lines v. Am. Steamship Owners Mutual Protection & Indemnity Ass'n (In re U.S. Lines)*,
    197 F.3d 631 (2d Cir. 1999)..............................................................12

*Union Carbide v. Viskase Corp. (In re Envirodyne Indus.)*,
    183 B.R. 812 (Bankr. N.D. Ill. 1995) ..............................................11

*In re Winstar Comm'cns*,
    348 B.R. 234 (Bankr. D. Del. 2005) ................................................13

**Statutes**

11 U.S.C. § 502 ................................................................................................................11

11 U.S.C. § 502(d) ...........................................................................................................13

11 U.S.C. § 510(c) ..........................................................................................................5, 9

11 U.S.C. § 542 .............................................................................................................9, 13

11 U.S.C. § 553 ................................................................................................................11

11 U.S.C. § 1101 *et seq.* .................................................................................8, 9, 11, 18

11 U.S.C. § 1102(a)(1) .......................................................................................................4

28 U.S.C. § 157(b) ..........................................................................................................6, 14

28 U.S.C. § 157(b)(2) ........................................................................................................9

28 U.S.C. § 157(b)(2)(B) ...........................................................................................7, 9, 12, 13

28 U.S.C. § 157(b)(2)(E) ..................................................................................................13

28 U.S.C. § 157(b)(2)(K) ...............................................................................................9, 13

28 U.S.C. § 157(b)(2)(O) ..............................................................................................11, 13

28 U.S.C. § 157(b)(3) .........................................................................................................7

28 U.S.C. § 157(d) ..........................................................................................................5, 6

**Other Authorities**

Tyson A. Crist, *Stern v. Marshall: Application of the Supreme Court's Landmark
    Decision in the Lower Courts*, 86 Am. Bankr. L.J. 627 (Fall 2012)........................19

U.S. CONST. art. III..........................................................................................................14

The Official Committee of Unsecured Creditors (the "**Committee**") on behalf of the estates of Personal Communications Devices, LLC ("**PCD**") and Personal Communications Devices Holdings, LLC ("Holdings," and, together with PCD, the "**Debtors**"), hereby objects to the Motion to Withdraw the Reference (the "**Motion**") [Adv. Proc. Dkt. 9][1] filed by Defendants PineBridge Vantage Partners, L.P., PineBridge Co-Investment AIV Partners, L.P., Vantage Star Investment Corp., PineBridge PEP IV Co-Investment, L.P., PineBridge Plan Star Investment Corp., and PineBridge PEP V Co-Investment, L.P. (the "**PineBridge Entities**").  Defendants DLJ Investment Partners III, L.P., DLJ Investment Partners, L.P., and IP III Plan Investor, L.P. (the "**DLJ Entities**") have joined in the Motion.  The PineBridge Entities and the DLJ Entities are collectively referred to herein as the "**Movants**".

## PRELIMINARY STATEMENT

Movants contend that withdrawal of the reference is mandated by *Stern v. Marshall*, ___U.S. ___, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), and, as a practical matter, would conserve judicial resources by avoiding possible duplication of effort between the Bankruptcy Court and the District Court.  Neither argument has merit.

First, as we discuss below, the Bankruptcy Court has statutory and constitutional jurisdiction to fully adjudicate each of the causes of action in the Amended Complaint.[2]  And this Court has already allocated judicial resources efficiently through the Court's standing order dated December 5, 2012 (entitled *In the Matter of The Referral of Matters to the Bankruptcy Judges* (the "**Standing Order**")), which provides that, even if the District Court determines that

---

[1] "Adv. Proc. Dkt." refers to the docket in the underlying Adversary Proceeding pending before the Bankruptcy Court, Adv. Proc. No. 13-08174 (AST) (the "***Adversary Proceeding***").

[2] Since the filing of the Motion, on January 24, 2014, the Committee filed a First Amended Complaint (the "Amended Complaint") with the Bankruptcy Court under seal in the Adversary Proceeding [Adv. Proc. Dkt. 34], as provided by the Stipulation and Order Regarding Sealing of Documents entered on the same date.  [Adv. Proc. Dkt. 33].  This Memorandum of Law addresses the Committee's claims as modified by the Amended Complaint.

the Bankruptcy Court cannot enter a final order or judgment, "the bankruptcy judge shall hear the proceeding and submit findings of fact and conclusions of law to the district court" unless ordered otherwise.  Movants have provided no reason not to follow the Standing Order in this case.  Nor can they.  However Movants choose to describe this litigation, it is a garden-variety claims objection proceeding like those litigated every day before bankruptcy courts throughout the United States.  Thus, regardless of whether it can enter a final order or judgment, the Bankruptcy Court is the proper forum for the adversary proceeding at this juncture of the case.

If the District Court is inclined to address the issue now, it should conclude that the Bankruptcy Court has the ability to enter final orders and judgments in this matter and decline to withdraw the reference. The Movants have asserted claims against the Debtors' estates.  The Committee, on behalf of the Debtors' estates, has asserted causes of action against the Movants challenging the validity, or seeking to reduce the amount, of those claims.[3]  This adversary proceeding, therefore, implicates one of the fundamental purposes of the bankruptcy process: *to adjudicate and administer claims against the Debtors' estates*.  This proceeding is not a claim by a debtor or trustee to augment the estate by suing non-claimants under state law.

Second,  regardless of whether the Bankruptcy Court has the ability to enter final orders and judgments in this case, discretionary withdrawal under the *Orion* factors (*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993) is unwarranted for many reasons, including the Bankruptcy Judge's familiarity with the parties and issues now before him, as reflected in his October 24, 2013 Order, [Bankr. Dkt. 218][4], in which

---

[3] The Committee has also asserted claims against The Insurance Company of the State of Pennsylvania ("**ISOP**"), which is the only Defendant who is not a Movant herein, and for which an affiliate of the PineBridge Entities acted as investment advisor with respect to ISOP's investments at issue in this case.

[4] "Bankr. Dkt." refers to the docket in the Debtors' chapter 11 cases, *In re Personal Communications Devices, LLC*, *et al.*, Case No. 13-74303 (Jointly Administered).

he determined that "the Committee has more than satisfied the colorable claim test", (*see, id.* at 13), and authorized the Committee to bring this adversary proceeding.

Third, withdrawal of the reference would reward the Movants for forum shopping based on their immediate interests, which have changed over time. The PineBridge Entities and ISOP are the majority owners of the Debtors and, under the Debtors' organizational documents, these jointly administered cases could not have been filed except at their direction.  Now, by way of the filing, the Movants have enjoyed the benefits and protections of the Bankruptcy Court's final financing order [Bankr. Dkt. 114], including the Debtors' stipulation that their secured claims are valid and not subject to avoidance (subject to the Committee's ability to assert a challenge within a specified period).

Notwithstanding their control of the Debtors and significant involvement in these cases, the PineBridge Entities now seek to distance themselves from the Debtors and the very cases they caused the Debtors to file.  In their Motion and accompanying Memorandum of Law (the "Memorandum") [Adv. Proc. Dkt. 9], the PineBridge Entities attempt to portray the Committee's causes of action as non-core claims that are only tangentially related to the bankruptcy process. In reality, however, the Committee's causes of action directly invoke one of the Bankruptcy Court's fundamental purposes—to adjudicate the Movants' claims against the Debtors' estates.

Moreover, the PineBridge Entities' position in this adversary proceeding conflicts with their position in Adversary Proceeding No. 8-13-08173 (the "***Christopher Litigation***").  In that case, PCD sued Philip Christopher, its founder and former CEO, in the Supreme Court of the State of New York, County of Suffolk.  Mr. Christopher asserted third party claims against PineBridge Investments LLC (the manager or managing member of many of the PineBridge Entities), PineBridge Direct Investments LLC, and PineBridge Global Investments LLC.  All of

the claims and third party claims were based on New York or federal law.  Those third party

defendants, each an affiliate of the PineBridge Entities, (a) removed the case to the United States

District Court for the Eastern District of New York, and (b) with the consent of the other parties,

requested and received an order referring the case to the Bankruptcy Court.  The PineBridge

Entities' contrasting positions in similar litigation is yet another reason to deny the Motion.

## STATEMENT OF FACTS

The Debtors filed voluntary petitions under chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**") on August 19, 2013 (the "**Petition Date**"). On August 26, 2013,

the United States Trustee appointed the Committee pursuant to Section 1102(a)(1) of the

Bankruptcy Code. The value of the unsecured creditors' claims is about $177 million.

On October 24, 2013, the Bankruptcy Court entered an Order which, among other things,

granted the Committee standing to bring certain causes of action on behalf of the Debtors'

estates. [Bankr. Dkt. 218].

The Committee filed the complaint (the "**Complaint**") under seal in this adversary

proceeding on October 28, 2013 [Adv. Proc. Dkt. 1], naming as defendants two groups of

entities.  The first group consists of the PineBridge Entities and ISOP.  The PineBridge Entities

and ISOP are collectively referred to herein as the "**PineBridge Defendants**." The second group

of defendants includes DLJ Investment Partners III, L.P., DLJ Investment Partners, L.P., and IP

III Plan Investor, L.P. (collectively, the "**DLJ Defendants**" and, together with the PineBridge

Defendants, the "**Defendants**").

On December 23, 2013, the DLJ Defendants and the PineBridge Entities filed motions to

dismiss the Complaint.  [Adv. Proc. Dkts. 12 and 14].  On January 15, 2014, ISOP filed its own

motion to dismiss the Complaint [Adv. Proc. Dkt. 30].  These motions remain pending before the

Bankruptcy Court.

- 4 -

On January 24, 2014, the Committee filed its First Amended Complaint (the "***Amended Complaint***") containing the following eight causes of action:

    (a)    Recharacterization of debt against the PineBridge Defendants;

    (b)    Recharacterization of debt against the DLJ Defendants;

    (c)    Equitable subordination pursuant to Section 510(c) of the Bankruptcy Code against the PineBridge Defendants;

    (d)    Setoff against all Defendants;

    (e)    Unjust enrichment against all Defendants;

    (f)    Breach of contract against all Defendants;

    (g)    Declaratory judgment against all Defendants regarding their purported liens and security interest in the Debtors' commercial tort claims; and

    (h)    Objections and disallowance of claims against all Defendants.

## LEGAL STANDARD

Pursuant to the Standing Order, "any or all cases under Title 11 and any or all proceedings arising under Title 11, or arising in or related to a case under Title 11" are referred to the bankruptcy court. Withdrawal of this standing reference is governed by 28 U.S.C. § 157(d), which provides for two types of withdrawal—mandatory and discretionary.

Although the Motion is silent about its basis, Movants seem to argue solely for discretionary withdrawal, as evidenced by two features of the Motion. First, the Movants rely heavily on *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993), which articulates the standard for discretionary withdrawal. Second, mandatory withdrawal applies to "cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *Shugrue v. Air Line Pilots Ass'n*, 922 F.2d 984, 995 (2d Cir. 1990). Because the Movants have not pointed to a

single non-Bankruptcy Code federal statute implicated in this proceeding, it appears that they have implicitly conceded the unavailability of mandatory withdrawal.

A district court may also withdraw the reference on a discretionary basis, "on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The primary focus of a district court's analysis of a motion to withdraw is judicial efficiency. This inquiry is influenced by whether the claims presented are core or non-core. *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993). As the Orion Court instructed, "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn.… [O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id.* Contrary to the Movants' assertions, every claim in the Amended Complaint is a core matter under section 157(b), and all other applicable factors under the *Orion* test support denying the Motion and keeping this proceeding in the Bankruptcy Court.

## LEGAL ARGUMENT

### A.    Withdrawal of the Reference Is Inappropriate.

If the District Court is inclined to address the issue at this juncture, it should conclude that the Bankruptcy Court may properly finally adjudicate the causes of action in the Amended Complaint.

The basic flaw in the logic upon which the Motion is built is encapsulated in the Movants' argument that "[t]he overwhelming majority of these claims [in the Complaint] are ***state law*** causes of action and are not core claims." Memorandum, ¶ 1 (emphasis in original). Movants seek to improperly conflate applicable law (i.e. state law versus federal

bankruptcy law) with core/non-core status, overlooking the directive contained in the statute itself, that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3); *accord Ben Cooper, Inc. v. Ins. Co. of Penn. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1399 (2d Cir. 1990) ("We read [28 U.S.C. § 157(b)(3)] as a demonstration of Congress' intent that bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankruptcy estate."). Instead, "the determinative issue is whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010) (per curiam) (quoting *In re Southmark Corp.*, 163 F.3d 925, 928-929 (5th Cir. 1999) (quotation marks omitted, alteration by Second Circuit)). In this proceeding, the Committee's claims are very much an extension of the claims adjudication process that is underway in the Bankruptcy Court.

As explained below, the gravamen of the Amended Complaint is the Committee's objections to the Defendants' secured claims. Allowance or disallowance of claims is a core matter and is "indisputably the realm of the bankruptcy court." 28 U.S.C. § 157(b)(2)(B); *In re Salander O'Reilly Galleries*, 453 B.R. 106, 118 (Bankr. S.D.N.Y. 2011). That state law is invoked during the claims adjudication process is neither surprising nor problematic. A creditor holds a "claim" if, prior to the bankruptcy petition, "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—'a right to payment'—under the *relevant non-bankruptcy law*." *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 2995) (quoting *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D. Tex. 1992) (emphasis added)). More often than not, the "relevant non-bankruptcy law" is

- 7 -

state law.  But the dispositive nature of such state law does not render the claims-adjudication process non-core—indeed, doing so would nullify the purpose of the bankruptcy court system.

Here, the Debtors (under control of the PineBridge Defendants) prepared and filed schedules that listed Defendants as holding undisputed, liquidated, non-contingent secured claims.  They further sought and obtained a final financing order in which the Debtors stipulated to their purported secured claims.  The Amended Complaint alleges several bases (using both state law and the Bankruptcy Code) upon which the Court should deny, subordinate, or offset the Defendants' secured claims.  Despite moderately complicated underlying facts, this is a garden-variety claim-objection proceeding that bankruptcy courts adjudicate every day.  Withdrawal of the reference would be both impractical and inappropriate.[5]

### 1.       The Committee's Claims Are All Statutorily Core.

As previously stated, the claims asserted in the Amended Complaint are all core.  These claims are summarized in the following table and discussed in further detail below:

---

[5] The cases Movants cite (at pp. 4-7 of the Memorandum) do not mandate otherwise.  In two of them, the court denied the motion to withdraw.  *See Lehman Bros. Holdings v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings)*, 480 B.R. 179 (S.D.N.Y. 2012) (debtor's common-law breach of contract claims and fraudulent transfer claims against secured creditor were non-core, but declining to withdraw reference at pretrial stage); *Adelphia Recovery Trust v. DLP Group*, 2012 WL 264180 (S.D.N.Y. 2012)(same).  In three cases where it was granted, the motion related to claims against parties who appear to have been non-claimants in the bankruptcy. See *Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs.)*, 491 BR 196 (E.D.N.Y. 2013) (chapter 7 trustee action against carrier that had issued insurance policy to debtor, seeking declaration that insurer had duty to defend; district court withdrew reference on permissive basis.); *Dev. Specialists v. Peabody Energy (In re Coudert Bros.)*, 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) (liquidating agent filed suit against former client of debtor to collect fees for prepetition work; motion to withdraw reference granted); *Joseph Delgreco v. DLA Piper (In re Joseph Delgreco & Co.)*, 2011 WL 350281 (S.D.N.Y. Jan. 26, 2011) (debtor filed malpractice suit in state court against former attorneys; debtor subsequently removed to district court, which referred to bankruptcy court under standing order of reference; malpractice claim was "principal" asset of the estate; claim held non-core and motion to withdraw reference granted).  In one case, it is unclear whether movant was a creditor or claimant in the bankruptcy proceeding. *Dynegy Danskammer v. Peabody Coaltrade Int'l*, 905 F. Supp. 2d 526 (S.D.N.Y. 2012) (debtor's breach of contract claim against seller would not necessarily be resolved by "adjudication of [debtor]'s title 11 petition;" motion to withdraw reference granted).

| Claim | Nature of claim | Core/Non-Core Status |
|---|---|---|
| 1 – Recharacterization (PineBridge Defendants) | Claims allowance and administration; Validity, extent and priority of liens | Core - § 157(b)(2)(B), (C), (K), and (O) |
| 2 – Recharacterization (DLJ Defendants) | Claims allowance and administration; Validity, extent and priority of liens | Core - § 157(b)(2)(B), (C), (K), and (O) |
| 3 – Equitable subordination (PineBridge Defendants) | Bankruptcy Code cause of action (§ 510(c)); Validity, extent and priority of liens | Core - § 157(b)(2)(B), (C), (K), and (O) |
| 4 – Setoff | Claims allowance and administration; Counterclaim | Core - § 157(b)(2)(B) and (O) |
| 5 – Unjust enrichment (distributions) | Counterclaim | Core - § 157(b)(2)(C) and (O) |
| 6 – Breach of Contract (negative capital accounts) | Counterclaim | Core - § 157(b)(2)(C) and (O) |
| 7 - Declaratory Judgment | Claims allowance and administration; Validity, extent and priority of liens | Core - § 157(b)(2)(B), (K) and (O) |
| 8 - Objections to and Disallowance of Claims | Claims allowance & administration; Turnover (§ 542) | Core - § 157(b)(2)(B), (E) and (O) |

### a.      Recharacterization

The first and second causes of action seek recharacterization of the Defendants' claims as equity interest holders.   Although recharacterization is not expressly listed as a core matter, it is intimately related to—and indistinguishable from—the claims allowance process, and therefore constitutes a core matter under 28 U.S.C. § 157(b)(2)(B) and (K).  *See also Ben Cooper, Inc. v. Ins. Co. of Penn. (In re Ben Cooper, Inc.*), 896 F.2d 1394, 1398 (2d Cir. 1990) ("In § 157(b)(2), Congress provided a non-exclusive list of proceedings which it deemed core." (emphasis added)).   The essence of the Committee's recharacterization claims is its allegation that

- 9 -

Defendants' claims should be paid after unsecured creditors receive distributions from the estate. This necessarily implicates an analysis of the validity, extent, and priority of Defendants' secured claims, a function in the purview of bankruptcy court. *See Resolution Tr. Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995) ("Fixing the order of priority of creditor claims against a debtor is an integral and historic bankruptcy function, and without this power the bankruptcy court would be rendered powerless to rehabilitate a debtor.").

Two cases are particularly instructive on this issue. First, *PSINet v. Cisco Sys. Capital Corp. (In re PSINet)*, 271 B.R. 1 (Bankr. S.D.N.Y. 2001) involved a different type of recharacterization claim. The debtor in PSINet brought an adversary proceeding against an equipment lessor, asking the court to recharacterize various equipment leases as secured financing agreements. *Id.* at 4-5. The defendant-lessor argued that the recharacterization required application of state law (i.e., Article 9 of the Uniform Commercial Code) and therefore was non-core. After engaging in an extensive analysis of Second Circuit precedent, the court concluded that application of state law was not determinative—rather, the critical question is "the underlying purpose and effect of the adversary proceeding in the context of the bankruptcy case." *Id.* at 25. If a proceeding merely seeks to augment the assets of the estate, it is non-core; but, if the action seeks "to achieve judicial determinations essential for the administration of the estate," it is core. *Id.* The PSINet court determined that the debtor's lease recharacterization action was core.

Second, the District Court recently allowed a recharacterization claim to remain in the Bankruptcy Court, without expressing any jurisdictional concerns. *Futter v. Duffy (In re Futter Lumber Corp.)*, 473 B.R. 20 (E.D.N.Y. 2012). Much like this matter, *Futter* involved a liquidating trust that brought an adversary proceeding seeking recharacterization of certain

- 10 -

insider claims as equity.  When the defendants appealed this Court's denial of their motion to dismiss, they did not raise jurisdictional issues.   Therefore, although the core/non-core issue was not before the court, it is noteworthy that the District Court allowed the case to remain in the Bankruptcy Court without expressing any concern about the Bankruptcy Court's inability to enter a final judgment.

### b.      Equitable Subordination

The Committee's third cause of action (equitable subordination) is clearly a core matter, because it is purely a creature of the Bankruptcy Code and is a cause of action that cannot exist outside of a bankruptcy case.  *Aetna Life Ins. Co. v. Danbury Square Assocs L.P. (In re Danbury Square Assocs, L.P.)*, 150 B.R. 544, 547 (Bankr. S.D.N.Y. 1993) (holding that equitable subordination claim is core matter that "is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting").

### c.      Setoff

The Committee's fourth cause of action seeks a determination that any sale proceeds to which the Defendants are entitled should be offset by amounts received by virtue of the Debtors' net operating losses.  Once again, while this claim involves the application of non-bankruptcy law, it is fundamentally a part of the claims allowance process and is therefore core under 28 U.S.C. § 157(b)(2)(B) and (O).

While section 553 of the Bankruptcy Code deals with a *creditor's* right of setoff, a *debtor's* right to setoff is still a key component of the bankruptcy process, via the claims allowance process.  *In re R. Bastyr & Assocs.*, 81 B.R. 978, 982, n.10 (Bankr. D. Minn. 1988) ("[Section] 553 deals only with a creditor's right of setoff.  A debtor's right of setoff is established under state law and § 502 of the Bankruptcy Code."); *Union Carbide v. Viskase Corp. (In re Envirodyne Indus.)*, 183 B.R. 812, 819 (Bankr. N.D. Ill. 1995) (A debtor's claim of

"[s]et-off can . . . serve as a proper basis for an objection and a proper ground for disallowance of a claim.").

### d. Unjust Enrichment and Breach of Contract

The fifth and sixth causes of actions are, in essence, counterclaims (in the Committee's capacity as successor to the Debtors) for unjust enrichment and breach of contract. While such claims—in a vacuum—could be non-core, the specific context in which they are raised here illustrates that these matters are inseparable from the claims allowance process. Defendants seek to assert a right of payment against the Debtors' bankruptcy estates, yet the Committee alleges that the Defendants owe money to the estate, based on pre-petition distributions and negative capital accounts. Resolution of these allegations and payment of Defendants' claims against the estate go hand-in-hand. *See U.S. Lines v. Am. Steamship Owners Mutual Protection & Indemnity Ass'n (In re U.S. Lines)*, 197 F.3d 631, 637 (2d Cir. 1999) ("Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings . . . or (2) the proceedings directly affect a core bankruptcy function.").

The Complaint's unjust enrichment and breach of contract claims are similar to the types of lender-liability counterclaims that have frequently been recognized as core matters. For example, in *Bankruptcy Servs. Inc. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432 (2d Cir. 2008), the debtor's confirmed plan assigned certain claims to the disbursing agent, Bankruptcy Services, Inc. ("BSI"). *Id.* at 437. BSI brought an adversary proceeding against creditor Ernst & Young, alleging various theories of fraud and negligence related to pre-petition accounting services. Ernst & Young objected that these state-law claims were non-core, but the Second Circuit disagreed, concluding that BSI's claims were "based upon the same operative

facts" as Ernst & Young's claim and were so closely related to the claims allowance process that they were core under § 157(b)(2)(B).  *Id.* at 460-462.

Similarly, in *In re Winstar Comm'cns*, 348 B.R. 234 (Bankr. D. Del. 2005), the debtor brought fraud and negligence claims against a lender.  The bankruptcy court concluded that these state law claims were core because they arose from the creditor's alleged conduct in connection with the same transactions that formed the basis of the creditor's claim against the estate.  *Id.* at 249-250; *accord Statutory Comm. of Unsecured Creditors v. Motorola (In re Iridium Operating LLC)*, 285 B.R. 822, 834 (S.D.N.Y. 2002) ("traditional non-core claims" against creditor were core because they "arise from the same transactions, are logically connected to each other, and interpret the same issues" as the creditor's claim); *Caldor Corp. v. S Plaza Assocs, L.P. (In re Caldor, Inc.-NY)*, 217 B.R. 121, 128 (Bankr. S.D.N.Y. 1998) (counterclaim by debtor against landlord-creditor was core).

### e.   Declaratory Judgment and Claims Objections

In its seventh cause of action, the Committee requests entry of a declaratory judgment that the Defendants do not have a security interest in the Debtors' commercial tort claims.  This cause of action falls squarely within 28 U.S.C. § 157(b)(2)(K), as it asks for a determination "of the validity, extent, or priority of liens."  Similarly, the eighth cause of action objects to the Defendants' claims and seeks disallowance under 11 U.S.C. § 502(d) and turnover under 11 U.S.C. § 542.  This cause of action is plainly encompassed within 28 U.S.C. § 157(b)(2)(B), (E) and (O).

### 2.   Other Considerations Dictated by *Orion* Militate Against Withdrawal of the Reference.

Even if the core nature of the Committee's claims are not completely determinative, consideration of the other factors enunciated by the *Orion* court compels the conclusion that

withdrawal of the reference is unwarranted.  Considerations of judicial efficiency, uniformity in the administration of bankruptcy law, the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, all weigh heavily in favor of Bankruptcy Court adjudication.  The bankruptcy court is uniquely qualified to adjudicate these causes of action which are directly related to pending creditor claims.  It is both more efficient and economical for all of the issues related to these claims to be tried in a single highly qualified court familiar with bankruptcy precedent and related principles.  Moreover, this will expedite the bankruptcy process by folding these causes of action into the bankruptcy court's overall supervision of the Debtors' chapter 11 cases and plan process.  A potential future jury demand by Movants does not alter this analysis.  Should Movants make such a demand, and insist on trial by jury before the District Court, the Court may withdraw the reference at the time of trial.  Finally, the only forum shopping being conducted in this matter is by the Movants, who orchestrated the Debtors' chapter 11 filings and the liquidation of their assets, and who now seek secured status and priority of payment of their purported claims against the Debtors' estates.  They cannot now be heard to complain that the forum they selected and benefitted from should not hear the issues raised by the Committee regarding the treatment of their claims.

**B.      The Bankruptcy Court is the Proper Current Forum Regardless of Whether the Reference May Be Withdrawn at a Later Date.**

The Standing Order provides, in pertinent part, as follows:

[I]f a bankruptcy judge or district judge determines that a bankruptcy judge cannot enter a final order or judgment consistent with Article III of the United States constitution in a particular proceeding referred under this order and designated as core under section 157(b) of title 28, unless the district court orders otherwise, the bankruptcy judge shall hear the proceeding and submit proposed findings of fact and conclusions of law to the district court…

The United States District Court for the Southern District of New York has a similar standing order. *See* Amended Standing Order of Reference, No. 12 Misc. 32 (S.D.N.Y., Jan. 31, 2012). In *SIPC v. Bernard L. Madoff Investment Securities*, LLC, 490 B.R. 46 (S.D.N.Y. 2013), Judge Rakoff explained that the standing order in the Southern District of New York was the result of an "emerging consensus" in the district that even when a bankruptcy court cannot enter a final judgment "it may nonetheless hear the case in the first instance and recommend proposed findings of fact and conclusions of law." *Id.* at 49. Both the emerging consensus of case law and the standing orders in the Southern and Eastern Districts recognize the efficiency of allowing a bankruptcy court, which is familiar with the facts of the case and well versed in the issues of law, to make its proposed findings and conclusions before the matter is heard by the district court. *See, e.g., id*. at 58 ("experience strongly suggests that having the benefit of the report and recommendation [of the bankruptcy court] will save the district court and the parties an immense amount of time") (citations omitted).

Consistent with the Standing Order in this district and with the reasoning in *SIPC v. Madoff*, in the present matter, the Bankruptcy Court is familiar with the underlying chapter 11 case and, like bankruptcy courts throughout the nation, routinely addresses the types of causes of action and issues of law raised in the Amended Complaint. Further, the Christopher Litigation is currently pending before the Bankruptcy Court— at the request of the PineBridge Entities' affiliates—and involves similar facts as those at issue here.[6] Withdrawing the reference, especially at this stage, would require duplication of efforts by both the courts and the parties.

The Movants try to paint a different—and incorrect—picture, stating that during the course of the bankruptcy cases "the [Bankruptcy] Court has not been required to acquire any

---

[6] Philip Christopher has moved to remand the Christopher Litigation to the state court in which it was originally filed prior to the Petition Date (the "***Remand Motion***"). None of the PineBridge Entities has joined in the Remand Motion, and it has not yet been fully briefed.

substantial familiarity with the issues in the Complaint…"  Memorandum, ¶ 4.  According to the Movants, there are only two matters that have required substantive hearings before the Bankruptcy Court: (a) debtor in possession financing; and (b) the sale of substantially all of the Debtors' assets.  Memorandum, ¶¶ 4-6.  These hearings do not support Movants' argument;  they undercut it.  First, the two matters referenced by the Movants are, next to confirmation of a plan of reorganization, among the most significant events in most chapter 11 cases.   More importantly, the Movants fail to disclose to the Court that the Bankruptcy Court has already considered in depth the facts and legal issues raised in the Amended Complaint.   Before commencing the Adversary Proceeding, the Committee filed a motion with the Bankruptcy Court requesting standing to assert causes of action on behalf of the Debtors' estates, which was vehemently opposed by the  Defendants.   In a seventeen page order [Bankr. Dkt. 218], the Bankruptcy Court granted standing to the Committee, finding, among other things, that the Committee's claims and supporting evidence had more than satisfied the "colorable claim" test.

Regardless of the District Court's determination regarding whether the Bankruptcy Court can finally adjudicate some or all of the Committee's claims, the District Court should decline to withdraw the reference and instead "receiv[e] the recommendation of [the Bankruptcy Court] that possesses both intimate familiarity with the underlying litigation and substantial expertise in the bankruptcy law that applies" to the causes of action at issue.  *See SIPC v. Madoff*, 490 B.R. at 58.  If the case approaches trial, and Defendants demand a jury, the case can be returned to this Court.

**C.   Bankruptcy Court Jurisdiction Is Constitutional.**

In light of *Stern v. Marshall*, 131 S.Ct. 2594 (2011), a determination that a matter is statutorily core is no longer the end of the inquiry.  Under *Stern*, there is now a third category of proceedings: "interstitial proceedings" that are statutorily core, but with respect to which a

bankruptcy court cannot (without consent of the parties) enter a final judgment. Yet it is clear from *Stern* itself that none of the claims in this proceeding falls in the new category of interstitial matters. And even if they did, *Stern* does not mandate withdrawal of the reference. Far from it.

The interstitial claim in *Stern* was a tortious interference counterclaim by the debtor (Vickie Lynn Marshall) against creditor Pierce Marshall. In ruling that the bankruptcy court lacked jurisdiction to enter a final judgment on Vickie's claim, the Supreme Court stressed that "there was never any reason to believe that the process of adjudicating Pierce's proof of claim would necessarily resolve Vickie's counterclaim." *Id.* at 2617. Thus, the Court distinguished Vickie's case from earlier cases where the Court had upheld bankruptcy court jurisdiction over claims against a creditor that necessarily must be resolved as part of ruling on the creditor's claim. *Id.* at 2616.

In the present case, unlike Vickie Lynn Marshall's tortious interference counterclaim, each of the Committee's causes of action must be resolved as part of ruling on the secured claims asserted by the Defendants against the Debtors' estates. In such a case, as Movants concede (*see* Memorandum, ¶ 19), the bankruptcy court has the constitutional authority to enter final judgment. *See Stern*, 131 S. Ct. at 2611-13.

In their discussion of *Stern*, movants confuse the secured claims at issue here with proofs of claims that Movants may in the future file in connection with their purported rights under the Sale Order and/or for potential reimbursement and indemnity (see Memorandum, ¶ 24). As Movants know, the claims now before the Bankruptcy Court are the claims Movants have asserted as second lien lenders under their purported loan agreements with the Debtors. Those claims were identified by the Debtors in the Schedules filed in their bankruptcy cases, and were stipulated to in connection with the final financing order. Indeed, the final financing order

- 17 -

provides:  "Upon entry of this Final Order, the Prepetition Secured Parties [including the Movants as second lien lenders] will not be required to file proofs of claim in either of the Chapter 11 Cases or Successor Cases for any claim allowed herein. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties." [Bankr. Dkt. 114, ¶ 27 (emphasis added)].  The process of adjudicating the Committee's causes of action would necessarily resolve Movants' claims.  Thus the constitutional concerns at issue in *Stern* are not present in this case.

This conclusion is supported by the Second Circuit's recent decision in *In re Bernard L. Madoff Investment Securities LLC*, --- F.3d ---, 2014 WL 103988 (2d Cir. 2014).  In that case, the bankruptcy court entered a permanent injunction barring individual creditors from pursuing claims against certain defendants in other courts because they were derivative of the claims asserted by the trustee against the same defendants in the bankruptcy court.  Both the district court and the Second Circuit upheld the injunction.  The Second Circuit explained that the "touchstone for jurisdiction [over a non-debtor's claim] remains whether it might have any 'conceivable effect' on the bankruptcy estate."  *Id.* *4.  Although the separate plaintiffs had attempted to "plead around" the Bankruptcy Code, their claims were essentially derivative of the trustee's claims and, accordingly, allowing the non-bankruptcy litigation to move forward would affect the bankruptcy estate.  The Second Circuit held, therefore, that the injunction was appropriate and did not run afoul of *Stern v. Marshall*.  Similarly, in the present case, the resolution of each of the Committee's causes of action will directly affect the Debtors' estates and the distributions to creditors.

Furthermore, even if this Court were to determine that *Stern* prohibits the bankruptcy court here from entering final judgment on the Committee's causes of action, the Court should

nonetheless decline to withdraw the reference and permit the bankruptcy court to enter proposed findings of fact and conclusions of law.   Since S*tern*, courts and commentators alike have considered and, at times struggled with, its implications.   However, as catalogued in part by author Tyson A. Crist in the American Bankruptcy Law Journal, one thing is clear:   "District courts have consistently rejected the argument that the reference should be withdrawn simply because the bankruptcy court cannot enter final judgment."   Tyson A. Crist, *Stern v. Marshall: Application of the Supreme Court's Landmark Decision in the Lower Courts*, 86 Am. Bankr. L.J. 627, 644-645 (Fall 2012) (citing cases at n. 105).   Rather, "[o]f those courts that have reached the question, … the overwhelming majority have declined, post-Stern, to withdraw the reference, recognizing the value of the bankruptcy judge's familiarity with the relevant law and the facts of the cases before them."   *Id*., *quoting Gecker v. Flynn (In re Emerald Casino, Inc.)*, 467 B.R. 128, 134 n.3 (N.D. Ill. 2012).   Movants here have provided the Court no basis to support a contrary result.

### CONCLUSION

For all of the reasons set forth above, this Court should conclude that (i) the Bankruptcy Court may fully adjudicate the causes of action asserted by the Committee in this adversary proceeding and, alternatively, (ii) with respect to those of the Committee's causes of action the Bankruptcy Court may not adjudicate to final judgment, if any, the Bankruptcy Court is the appropriate and best forum for adjudication of the entire adversary proceeding, and, (iii) with respect to those causes of action, the Bankruptcy Court, in keeping with the Standing Order, should hear the proceeding and, at its conclusion, submit findings of fact and conclusions of law to the District Court.

Accordingly, the Committee respectfully requests that the Court deny the Motion in its entirety.

Dated: New York, New York
       January 27, 2014

                         Respectfully Submitted,

                         PERKINS COIE LLP
                         Counsel for the Official
                         Committee of Unsecured Creditors


                         By:  */s/* Tina N. Moss
                           Schuyler G. Carroll
                           Gary F. Eisenberg
                           Tina N. Moss
                           Barry J. Reingold
                         30 Rockefeller Center, 22nd Floor
                         New York, NY  10112-0085
                         Tel: 212.262.6900
                         Fax: 212.977.1649